## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

KERRIE LYNN KLARNER,

      Plaintiff,

v.                                        2:23-cv-25-NPM

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

---

## ORDER

Plaintiff Kerrie Lynn Klarner seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings. (Doc. 9),[1] Klarner filed an opening brief (Doc. 16), the Commissioner responded (Doc. 17), and Klarner replied (Doc. 18). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

## I.    Eligibility for Disability Benefits and the Administration's Decision

### A.    Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

## B.    Factual and procedural history

On March 14, 2017, Klarner applied for supplemental security income. (Tr. 636).[5] She asserted an onset date of September 1, 2014, alleging disability due to the following: carpal tunnel, tendonitis, five-disc, osteoarthritis, scoliosis, bipolar

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities), 416.994(b)(1)(iv) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

[5] Klarner has filed multiple applications for disability insurance benefits "(DIB") and supplemental security income ("SSI") that were denied. At issue here are her fourth and fifth applications. DIB provides disability payments to claimants insured with the administration, while SSI provides means-tested disability benefits to uninsured claimants.

disorder, major depressive disorder, anxiety disorder, hypertension, high blood pressure, chronic inflation, chronic tendonitis, muscle strain, and headaches. (Tr. 275-76, 292-93). As of the alleged onset date, Klarner was 34 years old with a high-school education. (Tr. 275, 289, 292, 709). Klarner previously worked as a driver, a sales associate, a customer service representative, and a postmaster. (Tr. 675, 687-703).

On behalf of the administration, a state agency[6] reviewed and denied Klarner's SSI application initially on April 14, 2017, and upon reconsideration on August 28, 2017. (Tr. 275-91; 292-316). At Klarner's request, Administrative Law Judge (ALJ) Eric Anschuetz held a hearing, and, on February 27, 2019, the ALJ issued an unfavorable decision finding Klarner not disabled. (Tr. 127-79, 317-28). Klarner filed a request for review by the administration's Appeals Council, which was granted. (Tr. 356-59). On October 22, 2019, the Appeals Council issued an order remanding the case back to ALJ Anschuetz to provide further analysis. (Tr. 336-37). On remand, ALJ Anschuetz held another hearing and issued a fully favorable decision on July 17, 2020, finding Klarner disabled since March 14, 2017, the date of the SSI application. (Tr. 210-52, 342-48). Not long after, on December 17, 2020, Klarner filed an application for DIB alleging an onset date of September 1, 2014.

---

[6] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. §§ 404.1503(a), 416.903(a).

(Tr. 685).

Subsequently, on March 1, 2021, the Appeals Council issued a Notice of Review vacating ALJ Anschuetz's decision because it relied, in part, on medical records pertaining to an individual other than Klarner. The Appeals Council then remanded the case back to a different ALJ for further proceedings and with instructions to consider whether Klarner's newly-filed DIB application should be consolidated with her SSI application. (Tr. 352-53).

On remand, ALJ Raymond Rogers consolidated the two applications. He held a hearing and, on July 18, 2022, issued an unfavorable decision finding Klarner not disabled from September 1, 2014, the alleged onset date, to July 18, 2022, the date of the decision.[7] (Tr. 11-43, 180-209). Klarner's timely request for review by the administration's Appeals Council was denied. (Tr. 1-3). Klarner then brought the matter to this court, and the case is ripe for judicial review.

## C.    The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an

---

[7] The ALJ also issued a decision dated July 14, 2022 (Tr. 62-93), but this decision is not at issue here. (Doc. 16 at 4).

> impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. §§ 404.1512, 416.912 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found that while Klarner had worked in a variety of jobs since September 1, 2014 (the alleged onset date),[8] that work did not cross the regulatory threshold to be considered substantial gainful activity. (Tr. 17). At step two, the ALJ characterized Klarner's severe impairments as: degenerative disc disease of the cervical and lumbar spine, thoracic dextroscoliosis, partial thickness tear of the right shoulder, tear of the left shoulder, osteoarthritis of the hips, bilateral carpal tunnel syndrome, headaches, bipolar disorder, anxiety, and depression. (Tr. 17). At step three, the ALJ determined Klarner did not have an

---

[8] As discussed further below, the ALJ accepted Klarner's September 2014 onset date, despite this period having been previously adjudicated, because the musculoskeletal listings changed in 2021.

impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 18).

As a predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant has the residual functional capacity to: lift and carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight hour workday; stand and/or walk for six hours in an eight hour workday; occasional pushing and pulling as per exertional weight limits; occasional climbing of ramps or stairs, but no climbing of ladders, ropes, or scaffolds; frequent balancing, stooping, kneeling and crouching; no crawling; frequent forward, lateral, and overhead reaching; frequent handling and fingering; work environments of moderate noise defined by the SCO noise level III or less; no exposure to extreme bright lights like headlights, stage lights, or bright inspection lights, but normal home and office lighting is acceptable; must avoid concentrated exposure to vibration; no exposure to hazardous machinery or unprotected heights; able to understand, remember, and carry out simple tasks while maintaining attention and concentration for two hours at a time before requiring a regular scheduled break; low stress work defined as only occasional decision-making only occasional changes in the work setting; occasional interaction with coworkers and supervisors; and no interaction except incidental with the general public.

(Tr. 22-23). Consequently, the ALJ found Klarner unable to perform her past relevant work. (Tr. 41). At step five, the ALJ found Klarner could perform other work that exists in significant numbers in the national economy. (Tr. 42). In support, a vocational expert testified (Tr. 204-07) that an individual of Klarner's age, education, work experience, and RFC could perform the following representative occupations:

- *Marker,* DOT #209.587-034, light; SVP 2, with 300,000 jobs in the national economy;

- *Checker I,* DOT #222.687-010, light, SVP 2, with 35,000 jobs in the national economy;

- *Router*, DOT #222.587-038, light, SVP 2, with 52,000 jobs in the economy.[9]

Thus, for purposes of the Act, the ALJ concluded Klarner was not disabled.

## II.   Analysis

Klarner's appeal presents the following issues for review:

(1)   whether the ALJ failed to fully develop the record;

(2)   whether the ALJ had good cause to discount Dr. Trevor Cox's opinions;

(3)   whether the ALJ properly accounted for any difficulty Klarner might have with detailed instructions; and

(4)   whether substantial evidence supports the ALJ's step-five finding that a significant number of vocationally relevant jobs exist in the national economy.

### A.   Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and

---

[9] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

## B. The ALJ fully developed the record.

As mentioned above, Klarner has filed several applications for social security

disability benefits. One such application for DIB was filed on April 15, 2015, with an alleged onset date of September 12, 2014. An ALJ denied this application on December 9, 2016, finding Klarner not disabled from September 12, 2014, through March 31, 2016, the date last insured. (Tr. 256-69). But due to a 2021 change in the musculoskeletal listings—and so, despite the previously adjudicated period—Klarner's current applications were reviewed from the alleged onset date of September 1, 2024. Because of that change in the law, the ALJ determined that res judicata did not apply, and he did not reopen the April 2015 application. (Tr. 12).

Klarner argues that, because the relevant time period here overlaps with the April 2015 application period, the ALJ should have "associated"[10] certain medical records and prior administrative findings from the April 2015 application file. Specifically, she notes that the prior decision included evidence from state-agency doctors Suzanne Johnson, Candace Mihm, and Robert Hodes, as well as the opinions of consulting physician Dr. Paula Bowman and treating providers Dr. Joseph Aloise and APRN Robert Marrero. (Doc. 16 at 13-14). Because the ALJ purportedly failed to "associate" this evidence, Klarner argues the ALJ failed to develop a full and fair record, constituting reversible error.

---

[10] It is not entirely clear what Klarner means by "associate." But the court presumes she takes issue with the ALJ's failure to make this purported evidence part of the record.

While the ALJ has a basic duty to develop a full and fair record, "the claimant bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Klarner's representative failed to raise any issue with the record at the hearing. In fact, he specifically informed the ALJ that there was no outstanding evidence. (Tr. 184). So she cannot argue here, for the first time, that the record should have been further developed. *See Larry v. Comm'r of Soc. Sec.*, 506 F. App'x 967, 969 (11th Cir. 2013) ("The ALJ then specifically asked [the plaintiff's attorney] if he had any additional exhibits, and his attorney replied that the record was complete. Thus, any alleged error the ALJ may have made in not obtaining more recent medical records was invited." (internal citations omitted)); *Bischoff v. Astrue*, No. 07-60969, 2008 WL 4541118, *18 n.9 (S.D. Fla. Oct. 9, 2008) (rejecting a failure-to-develop-the-record claim when the claimant "neither produced [the records at issue] nor requested that the Commissioner obtain them," and, during the hearing, claimant's counsel represented that the record was complete). So Klarner's argument that the ALJ failed to develop the record falters from the start.

Putting aside this deficiency, Klarner's argument still lacks merit. Citing HALLEX I-2-1-13(B)(1), she argues that the ALJ was required to consider the

evidence from her prior claim.[11] HALLEX I-2-1-13(B)(1) provides that Office of Hearing Operations (OHO) staff must request a prior claim(s) file, without consulting the ALJ, when:

- The pending claim is before the ALJ on a continuing disability review;
- The pending claim involves a collateral estoppel issue;
- The pending claim involves a possible reopening or res judicata issue;
- Consideration of prior findings is required to comply with an Acquiescence Ruling; or
- Fraud or similar fault may be involved in the current or prior claim.

HALLEX I-2-1-13(B)(1), 2014 WL 2600156. Klarner suggests that the third scenario applies here. Indeed, both res judicata and reopening of the 2015 application were *possible*, and the ALJ grappled with both issues. So Klarner is correct that this HALLEX section is implicated, but she is mistaken in her belief that the ALJ acted inconsistently.

This HALLEX section does not require an ALJ to make a prior claim file part of the record.[12] The final subsection—which neither party briefed—explains, "When

---

[11] The Eleventh Circuit has suggested that HALLEX does not carry the force of law. *See, e.g.*, *George v. Astrue*, 338 F. App'x 803, 805 (11th Cir. 2009) ("[E]ven if we assume that . . . HALLEX carries the force of law—a very big assumption—the ALJ did not violate it[.]"); *Carroll v. Soc. Sec. Admin., Comm'r*, 453 F. App'x 889, 892 (11th Cir. 2011) ("HALLEX is an agency handbook for the SSA not mentioned in § 405(g), so it cannot serve as the basis to remand [claimant's] case."). Other courts have concluded that it creates no legally enforceable rights. *See Clance v. Comm'r of Soc. Sec.*, No. 8:20-cv-557-T-SPF, 2021 WL 4129556, *3 (M.D. Fla. Sept. 10, 2021) (collecting cases).

[12] In fact, this subsection cited by Klarner does not appear to establish *any* duty of the ALJ. Rather, it imposes a duty on OHO staff to request prior claim files for the ALJ's consideration. HALLEX I-2-1-13(B)(1). This clearly occurred here given the prior ALJ's 2016 opinion was made a part of the record. (Tr. 256-69.) As discussed below, the ALJ's duty to address information from a prior claim file only arises when he relies on such evidence. HALLEX I-2-1-13(F).

an ALJ relied on information from a prior claim(s) file, the ALJ will make the evidence part of the record in the pending claim and address the evidence in the written decision" but "[a]n ALJ *is not required to address evidence on which the ALJ does not rely*." HALLEX I-2-1-13(F) (emphasis added). "Thus, the ALJ need not make information from a prior claims file part of the record or refer to it in the decision if he or she does not rely on it." *Class v. Berryhill*, No. 3:16-cv-1415-J-JBT, 2018 WL 11255570, *3 (M.D. Fla. June 14, 2018). Here, the ALJ included the evidence from the 2015 application upon which he relied.

Despite Klarner's contention that the ALJ failed to "associate" the opinions of Dr. Joseph Aloise, the ALJ discussed Dr. Aloise's reports in his opinion and included them in the record. (*See* Tr. 25, 1237-51). Moreover, the ALJ addressed plenty of other evidence from the 2015 application file, including MRIs (*compare* Tr. 26 *with* Tr. 265), treatment notes (*compare* Tr. 27 *with* Tr. 263-64), as well as the opinions of Dr. Debra Roggow from 2016 (*compare* Tr. 28 *with* Tr. 266). So the ALJ did not entirely ignore Klarner's medical records from the 2015 application (as her briefing would lead one to believe). And, notably, most of the evidence from the 2015 application upon which the ALJ relied pertains to musculoskeletal limitations. There is good reason for this.

As noted, the ALJ only accepted Klarner's alleged 2014 onset date and, thus, reviewed the prior 2015 application, because the changes to the musculoskeletal

listing compelled him to do so. *See* POMS GN 03101.160 ("If anything has changed (including the law and regulations), we cannot apply res judicata, but must make a determination or decision based on the merits of the application."). As such, the ALJ's omission of the opinions of Drs. Mihm, Hodes, Bowman, and nurse practitioner Marrero becomes reconcilable. Each of these medical sources opined on Klarner's mental limitations. But since the ALJ adjudicated an onset date that fell before the prior application period due to a change in the musculoskeletal listings, evidence going to that issue would naturally draw more attention.

Against this backdrop, the ALJ did not rely upon the omitted medical opinions from the 2015 application pertaining to mental limitations because they were not relevant to his compulsory musculoskeletal review. And although Dr. Johnson opined on Klarner's physical limitations, the ALJ apparently did not rely on her opinions. So the ALJ did not need to address these opinions or make them a part of the record. He did, however, address the evidence from the 2015 application that he relied upon. Thus, the ALJ complied with HALLEX.

Even assuming the ALJ did not follow HALLEX, any such error would be harmless because Klarner fails to show prejudice. *See McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596, 599 (11th Cir. 2016) ("Even assuming (without deciding) that HALLEX carries the force of law and the agency failed to comply with it, [plaintiff] has not shown that she was prejudiced by this failure."); *Clance*, 2021 WL

4129556, at *3. Klarner only offers conjecture based on vague assertions that the prior ALJ's RFC is more restrictive "in some respects," or that the prior ALJ's description of the omitted opinions sounded more restrictive than anything the ALJ described here. But, even crediting Klarner's speculation, it carries little weight since the previous ALJ still denied the 2015 application for disability benefits. *See Dunson v. Acting Comm'r of Soc. Sec. Admin.*, No. 3:17-cv-532-J-34MCR, 2018 WL 3244005, *3 (M.D. Fla. Apr. 17, 2018), *report and recommendation adopted*, 2018 WL 3241270 (July 3, 2018) (noting plaintiff "failed to support his conclusory assertion that evidence considered in a prior, unfavorable decision would support a disability finding here").

Finally, to constitute reversible error, Klarner must demonstrate that the record contains evidentiary gaps without the omitted medical evidence. *See Cruz v. Comm'r of Soc. Sec.*, No. 6:20-cv-1755-DNF, 2022 WL 633377, *3 (M.D. Fla. Mar. 4, 2022) ("To remand a case because of an ALJ's failure to fully develop the record, the claimant must show that his right to due process has been violated to such an extent that the record contains evidentiary gaps, which resulted in unfairness or clear prejudice."). She makes no effort to do so. And since the omitted evidence was not pertinent to the change in legal standard, it is doubtful she could make such a showing. Thus, for a host of reasons, Klarner's failure-to-develop-the-record argument fails.

### C.   The ALJ had good cause for discounting Dr. Trevor Cox's opinions.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairment(s), including the claimant's symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and the claimant's physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (cleaned up) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted).[13]

"Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (internal citation omitted). "The ALJ has wide latitude to determine what weight to assign to those opinions, so long as he operates within the regulatory and judicial frameworks." *Zanders v. Colvin*, No. CV412-182,

---

[13] Because the ALJ adjudicated Klarner's onset date from 2014, it is subject to the administration's pre-March 2017 regulations and the case law that construes and applies them.

2013 WL 4077456, *5 (S.D. Ga. Aug. 12, 2013). When determining the weight to give to a medical opinion, an ALJ considers several factors, including: (1) the examining relationship; (2) the treatment relationship;[14] (3) whether the opinion is amply supported; (4) whether the opinion is consistent with the record; (5) the doctor's specialization; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179 (internal citation omitted). Failure to "clearly articulate the reasons for giving less weight to the opinion of a treating physician" is "reversible error." *Lewis*, 125 F.3d at 1440 (internal citation omitted).

Treating physician Dr. Trevor Cox completed an RFC form in December 2019 and a Medical Source Statement in April 2021. (Tr. 1362-67, 1865-67). Therein, he identified an array of extreme limitations that would limit Klarner to a reduced range of sedentary exertional activities.  For instance, the forms indicate Klarner can lift less than ten pounds for 1/3 of an eight-hour workday; she can stand and/or walk for less than two hours; she can sit for less than two hours; for less than 1/3 of the workday, she can climb, balance, stoop, bend, kneel, crouch, crawl, reach in all directions, handle, and finger; she is required to lie down to relieve pain; and she

---

[14] This factor includes consideration of the length of the treatment and frequency of examination, as well as the nature and extent of the treatment relationship. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

needs to rest for 2-4 hours per day. (Tr. 1365-67). Dr. Cox also concluded that Klarner met the paragraph A criteria for Listing 1.04—disorder of the spine—which existed before March 31, 2016. (Tr. 1867).

The ALJ considered and ultimately discounted Dr. Cox's opinions. The ALJ first explained that Dr. Cox's assigned limitations were "highly inconsistent" with his own physician examinations, which do not reflect any significant musculoskeletal abnormalities, gait problems, or strength deficiencies. (Tr. 40). Substantial evidence supports this finding. Indeed, Dr. Cox's treatment notes repeatedly reflect no musculoskeletal problems, that Klarner presented in no acute distress, that an examination of her spine was normal with full range of motion, and that she had a normal gait and stance.  (Tr. 1573-74, 1577-78, 1582-83, 2102-03, 2108-09). An ALJ properly discounts a treating physician's opinion when it is inconsistent with the treater's own notes. *See Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 541 (11th Cir. 2016).

The ALJ also noted Dr. Cox's findings are inconsistent with Klarner's imaging and mostly normal neurological consultation conducted in 2022. (Tr. 40). Indeed, the neurological evaluation with Dr. Annette Goodman showed that Klarner exhibited a full range of motion, and she had a normal gait, normal coordination, and a normal motor exam with symmetric strength. (Tr. 2232-33). An MRI conducted of her cervical, lumbar, and thoracic spine in 2016 also revealed minimal impression.

(Tr. 1024-27). This inconsistency with the record as a whole further supports the ALJ's discount of Dr. Cox's opinions. *See Ybarra*, 658 F. App'x at 541 (noting an ALJ may discount a treating physician's opinion when it is unsupported by medical evidence and inconsistent with the record as a whole).

The ALJ next explained that Dr. Cox's extreme limitations are inconsistent with Klarner's reported activities of daily living. (Tr. 40). For instance, Klarner reported that she shops, does laundry, and drives. (Tr. 718-19). She also reported part-time work test driving flex vehicles eight hours a day from July 2019 to 2020. And for three months in 2016, she worked as a casino attendant for four to eight hours a day, four days a week. (Tr. 905-06). "An ALJ does not need to give a treating physician's opinion considerable weight if evidence of the claimant's daily activities contradicts the opinion." *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011). And continuing employment—albeit, not at the level of substantial gainful activity—still suggests that Klarner's ability to work is not as limited as Dr. Cox suggests. *See* 20 C.F.R. §§ 404.1571, 416.971 ("The work . . . that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level."); *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 808 (11th Cir. 2013).

The ALJ also observed that Dr. Cox did not begin treating Klarner until 2019, which is at least three years after the date last insured. This provides further

justification for the ALJ's decision to discount the opinions. *See* 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(2)(i)-(ii); *see also Gelbart v. Berryhill*, No. 17-cv-61361, 2018 WL 5885950, *10 (S.D. Fla. Aug. 22, 2018) (affirming the ALJ's discount of a treater's opinion when the treating physician first began treating the plaintiff three years after the date last insured); *Maczkowicz v. Colvin*, No. 3:14-cv-192/EMT, 2015 WL 5680373, *10 (N.D. Fla. Sept. 25, 2015) (same). And as for Dr. Cox's opinion that Klarner meets a medical listing, the ALJ was under no obligation to afford this any weight. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Accordingly, the ALJ's evaluation of Dr. Cox's opinion does not provide any grounds for reversal.

In protest, Klarner points to evidence that may tend to corroborate Dr. Cox's extreme limitations. But the court must decline her invitation to reweigh the evidence and potentially come to a different conclusion. *See Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 882 (11th Cir. 2019) ("To the extent that [plaintiff] points to other evidence that would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of this Court's appellate review, which precludes it from re-weighing the evidence or substituting its own judgment for that of the Commissioner."). Indeed, it is improper to second guess the weight given to a treating physician's opinion when the ALJ articulates a specific justification for it. *Hunter v. SSA*, 808 F.3d 818, 823 (11th Cir. 2015). The ALJ has

done so here.

**D.     The ALJ properly accounted for any difficulty Klarner might have with detailed instructions.**

The ALJ gave "significant weight" to the opinions of the state-agency psychological consultants, Drs. Barbara Lewis and John Thibodeau. They assessed that Klarner is "moderately limited" in her ability to understand and remember detailed instructions, adding that she "would have difficulty with detailed instruction, but is able to understand and remember simple instructions." (Tr. 286, 308). Based on these opinions, Klarner argues the ALJ should have included a simple-instruction limitation in the RFC. And, in her view, the ALJ's failure to include such a limitation when soliciting testimony from the vocational expert renders the step-five conclusion unsupported by substantial evidence. (Doc. 16 at 24). Courts have routinely rejected this argument.

The ALJ limited Klarner to "simple tasks," and the state-agency consultants found Klarner only "moderately limited" in her ability to understand and remember detailed instructions. In such circumstances, courts have found an ALJ's decision not to include a simple-instruction limitation in the RFC is supported by substantial evidence. *See Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, *7 (11th Cir. Jan. 10, 2022) (because the state-agency psychologists found that the claimant was "only moderately limited in her ability to carry out detailed instructions," the ALJ did not commit error by limiting her to simple tasks instead

of simple instructions);[15] *Corbitt v. Kijakazi*, No. 2:20-cv-771-CWB, 2023 WL 2703996, *8 (M.D. Ala. Mar. 29, 2023) (substantial evidence supported the ALJ's decision not to include simple instructions as a limitation in the RFC when he limited the claimant to simple tasks, which equates to unskilled work, and the treating doctor opined claimant was moderately limited in the ability to carry out detailed instructions); *Robinson v. Comm'r of Soc. Sec.*, No. 6:17-cv-1619-ORL-DCI, 2019 WL 118031, *4 (M.D. Fla. Jan. 7, 2019) ("the ALJ's determination that Claimant can perform simple, routine, and repetitive tasks adequately accounts for Dr. Trinidad's opinion that Claimant is moderately limited in her ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions").

Even assuming the ALJ should have explicitly included a simple-instruction limitation, any such failure to do so was harmless. At step five, the ALJ identified three vocationally relevant occupations that Klarner could work given her assigned RFC. (Tr. 42). Each of the identified jobs are SVP 2, which translates to unskilled work.[16] And, in turn, unskilled work requires an ability to understand, carry out, and remember simple instructions. *See* SSR 85-15, 1985 WL 56857, at *4 ("The basic

---

[15] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

[16] *See supra* n.9.

mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions[.]"). Additionally, each of the three occupations are reasoning level two.[17] The Eleventh Circuit has held that there is no inconsistency between a limitation to simple instructions and reasoning-level-two occupations. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323-24 (11th Cir. 2021). So, the omission of a simple-instruction limitation in the RFC is harmless because the step-five finding is based on occupations that are SVP 2 and reasoning level two. *See Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) ("To the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination."); *James v. Kijakazi*, No. 21-35586, 2022 WL 1302148, *2 (9th Cir. May 2, 2022) ("Where an ALJ fails to include a credited limitation in the RFC, the error is harmless if that limitation would not preclude performance of the jobs identified in step four or five."); *Lane v. Colvin*, 643 F. App'x 766, 769 (10th Cir. 2016) (finding harmless an ALJ's error of not expressly including in the RFC a limitation assessed by state agency consultant because the capacity required to do the jobs identified by the ALJ at step five is not contrary to the consultant's limitation); *Tara C. v. Comm'r Soc. Sec. Admin.*, No.

---

[17] *See* DICOT 209.587-034, Marker, 1991 WL 671802; DICOT 222.687-010, Checker I, 1991 WL 672130; DICOT 222.587-038, Router, 1991 WL 672123.

6:19-cv-00147-YY, 2020 WL 886297, *5 (D. Or. Feb. 24, 2020) ("[T]he ALJ identified a job compatible with the more limited RFC plaintiff asks this court to adopt. Having identified a job compatible with the narrower RFC, remand would serve no useful purpose barring further error[.]").

Finally, it is worth observing that Klarner focuses on only one portion of Drs. Lewis's and Thibodeau's opinions. But an ALJ is not required to adopt verbatim every portion of a medical source's opinion simply because he finds it persuasive. *See Vilches v. Kijakazi*, No. 3:21-cv-15-KFP, 2022 WL 11455775, *3 n.2 (M.D. Ala. Oct. 19, 2022) ("An ALJ does not properly discharge [his] duty by finding a single medical opinion persuasive and then deferring verbatim to that physician's findings. The ALJ need not adopt every part of an opinion that the ALJ finds generally persuasive."); *Sanders v. Comm'r of Soc. Sec.*, No. 2:20-cv-788-NPM, 2022 WL 970181, *5 (M.D. Fla. Mar. 31, 2022) ("But finding an opinion persuasive does not mean it is controlling."); *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, *8 (M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source…because the responsibility of assessing the RFC rests with the ALJ."). And, at bottom, Klarner has made no attempt to explain how an ability to only understand and remember simple tasks is materially different from an ability to only understand and remember simple instructions.

For each of the foregoing reasons, the RFC's omission of any explicit limitation concerning detailed instructions does not give rise to any error.

### E. Substantial evidence supports the ALJ's step-five finding that a significant number of vocationally relevant jobs exist in the national economy.

While the claimant always bears the burden of proving that she is incapable of performing any substantial gainful activity, the administration has the initial burden of production at step five of the sequential analysis to show that there are a significant number of jobs that can be performed by someone with the claimant's age, education, work experience, and RFC. To satisfy this burden, the administration routinely relies on the opinions of vocational experts who testify during the ALJ hearings.

A vocational expert "is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). And because an ALJ may rely upon a vocational expert's knowledge or expertise, *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012), we are only concerned with whether the vocational expert's testimony constitutes substantial evidence and not whether substantial evidence supports the vocational expert's testimony. *See Pace v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 781 (11th Cir. 2019).

The Social Security regulations "do not require a [vocational expert] to produce detailed reports or statistics in support of her testimony." *Bryant*, 451 F. App'x at 839; *see also Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010) (same). Rather, a vocational expert's recognized expertise provides the necessary foundation for his or her testimony. No additional foundation is required. *See Leonard v. Comm'r of Soc. Sec.*, 409 F. App'x 298, 301 (11th Cir. 2011). So, a vocational expert's number-of-jobs testimony "may count as substantial evidence even when unaccompanied by supporting data." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019).

The regulations do not require any degree of precision, and the available data in this area is imperfect. Moreover, the traditional rules of evidence do not apply, and opinion testimony in this kind of proceeding is not subject to litigation-like scrutiny. But a vocational expert's testimony will fail to supply substantial evidence in support of an ALJ's unfavorable step-five finding if the claimant demonstrates at the hearing that the expert's methodology contains several significant mistakes and thereby lacks a "baseline of reliability." *Goode*, 966 F.3d at 1285.

In this matter, the vocational expert testified that she relied on SkillTRAN software to determine the number of jobs that exist in the national economy. (Tr. 208). This source has been endorsed by the Eleventh Circuit as an acceptable method for vocational experts to assess job numbers. *See Goode*, 966 F.3d at 1284. Klarner

contends, however, that the vocational expert misapplied SkillTRAN and thereby miscalculated the number of jobs. Specifically, the vocational expert testified that, per SkillTRAN, the role of "marker" had 300,000 jobs in the national economy, "checker I" had 35,000, and "router" had 52,000. (Tr. 207). But Klarner claims SkillTRAN shows only 136,785 marker jobs, 4,604 checker I jobs, and 25,152 router jobs. (Doc. 16 at 10; Tr. 994-95). So, in her view, the vocational expert's testimony was flawed, which renders the ALJ's step-five finding unsupported by substantial evidence.

Klarner's argument fails for a very simple reason. In the ALJ's step-five analysis, he outlined the vocational expert's findings regarding the number of available jobs. He then noted, "[a]ny one of these jobs alone would provide a substantial number of jobs the claimant could perform." (Tr. 42). The occupation with the lowest number of jobs was checker, with 35,000 jobs in the national economy. So even if the court were to adopt Klarner's SkillTRAN figures, which totals 166,541 jobs, this still vastly exceeds the 35,000 threshold, which the ALJ found substantial. Thus, any purported miscalculation by the vocational expert was harmless. *See Partipilo v. Comm'r of Soc. Sec.*, No. 8:22-cv-1461-JSS, 2023 WL 4362517, *5 (M.D. Fla. July 6, 2023) (dismissing claimant's argument that the vocational expert, utilizing SkillTRAN, overstated the number of jobs available because the ALJ found that even reducing them by 97 percent still yields a

significant number); *Garrow v. Saul*, No. 5:19-cv-586-Oc-18JBT, 2020 WL 5802493, *5 (M.D. Fla. Aug. 19, 2020), *report and recommendation adopted*, 2020 WL 5797867 (Sept. 29, 2020) (finding any error harmless where the plaintiff provided contrary job estimates derived from SkillTRAN because "[r]egardless of whether the VE's estimate was exact, the number of jobs that Plaintiff argues exists in the national economy (over 96,000) is still more than sufficient to constitute a significant number of jobs").

Besides, the relevant inquiry is not whether the vocational expert's testimony is supported by substantial evidence; it is whether the ALJ's decision is. *Pace*, 760 F. App'x at 781. Here, the vocational expert—who has a master's degree in rehabilitation counseling, primary expertise in job search and placement, and over twenty years of vocational rehabilitation experience—testified that her testimony is consistent with the DOT. (Tr. 207, 964-66). The ALJ concurred. (Tr. 42). Plus, Klarner's counsel did not object to the vocational expert's qualifications (Tr. 204), nor did he raise this purported inconsistency in job numbers to the ALJ. Courts have routinely rejected a claimant's post-hearing research into job data addressed by the vocational expert. *See Santana v. Kijakazi*, No. 1:21-cv-23680, 2023 WL 2479768, *7 (S.D. Fla. Feb. 22, 2023), *report and recommendation adopted*, 2023 WL 2477509 (Mar. 13, 2023) (collecting cases); *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1010 (11th Cir. 2020) (refusing to consider occupational employment

statistics presented for the first time to the district court). Thus, the vocational expert's testimony constitutes substantial evidence for the ALJ's step-five finding.

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**ORDERED** on March 27, 2024.

NICHOLAS P. MIZELL
United States Magistrate Judge